GEORGE M. BARNARD & others *vs.* VERMONT AND MASSACHU-
SETTS RAILROAD COMPANY.

If the stockholders of a corporation have passed a vote instructing the directors to adjust
an interest dividend, which had been expected by the subscribers to the capital stock, by
*issuing certificates therefor, payable at a future time named, with a condition that, if there*
should not then be money enough in the treasury to pay the whole amount, the holders
of the certificates should receive as much *pro rata* as the treasurer should be able to pay,
and that he should give public notice as soon as he should be able to pay the balance, and
the directors have accordingly issued such certificates, the holder of one of them, if under
any circumstances he can maintain an action upon it, can only do so by proof that the
company was able to pay the full amount of interest covered by the vote, either at the
specified time, or at the commencement of the action; and it is immaterial whether cer-
tificates have been issued for the full amount or not.

If a corporation has voted to pay to its stockholders an interest dividend at some future
time, when it should be able, and issued certificates therefor accordingly, the determina-
tion of the question whether at any particular time it is able to pay it does not rest in
the final decision of the directors, but in that of the court, who, in judging of it, will pay
regard not only to the existing liabilities and funds of the corporation, but also to those
contingencies to which it is exposed which may require unusual outlays.

CONTRACT brought upon the following certificate, issued by
the defendants: " Vermont and Mass. R. R. Office, Boston,
April 15, 1853. This is to certify that Barnard, Adams & Co.,
in liquidation, are entitled to thirty-one hundred and eighty-one
$\frac{91}{100}$ dollars, being interest to April 15th 1849 on 995 shares of
Vermont and Mass. R. R. stock, payable to the said Barnard,
Adams & Co. or order at this office, agreeably to a vote of the
stockholders passed February 9th 1853, a copy of which is on
this certificate. John Rogers, Treasurer."

The vote referred to, which was copied upon the certificate,
was all that portion of the vote of February 9, 1853, which fol-
lows the preliminary recitals contained therein; and the whole
vote is stated hereafter.

It was agreed, in the superior court, that the defendants are a
railroad corporation, duly organized under the laws of this com-
monwealth, and, the amount of stock required by the act of in-
corporation before organization having been subscribed, the first
meeting was duly called and held on the 21st of November 1844,
at which the following vote was passed:

" *Voted,* That as soon as any assessment or assessments upon the capital stock shall be laid, each subscriber shall have the privilege of paying in at any time the whole amount of his subscription, or any portion thereof, provided that such portion be not less than the amount of one or more assessments, and that all subscribers be allowed interest on all sums paid by them up to the time when the road shall be completed and put in operation."

At a meeting of the stockholders held in February 1845, the directors were authorized to arrange a convenient system for the treasurer, by which the payments should be made in uniform sums, with interest from uniform dates, in pursuance of which the directors paid or allowed the interest to the 1st of October 1848. On the 10th of April 1849, the directors voted that the interest should cease after the 15th of that month. On the 9th of February 1853 the following vote was passed, at a meeting of the stockholders :

" Whereas the stockholders of the Vermont and Massachusetts Railroad Company did expect an interest dividend in April 1849; and whereas the directors were deterred from declaring it as contemplated, by reason of the pecuniary inability of the corporation to meet and pay said dividend ; and whereas, ever since said date, the pecuniary resources of the corporation have been and still are totally inadequate to meet and pay said dividend; but nevertheless, as it is the wish of the stockholders to have this matter settled, it is therefore hereby voted, that the directors be and they are hereby authorized and instructed to declare and adjust said dividends on and after the 15th of April next by uttering certificates therefor, payable on the 15th of July 1856, to holders of stock on the 15th of April 1849, or their order, with the express understanding and agreement that, if there is not sufficient money in the treasury to meet the whole amount of said dividend on the day that it falls due, 15th of July 1856, the holders of said scrip shall each and every of them receive *pro rata* so much as the treasurer is able to pay, and, as soon thereafter as the treasurer is able to pay the balance due on said interest scrips, he shall give due notice

of the fact in two or more papers published in the city of Boston."

The directors in the same month passed a vote authorizing the treasurer to issue certificates accordingly.

For the interest from October 1st 1848 to April 15th 1849, amounting in all to $81,331.84, the stockholders were credited in the books of the corporation. The certificate upon which the present action is founded, and other like certificates, to the amount of $35,395.30 in all, were issued to the plaintiffs and the other stockholders, who thereupon signed a receipt for the various sums expressed therein. None of these certificates have been paid; nor has any of the interest which accrued between those dates been paid, except that in three instances small sums were allowed to stockholders, upon a settlement for assessments upon their shares. In July 1856 there was a considerable floating debt due from the defendants, which was finally extinguished in 1859. They have also issued two mortgages upon their road; the first, dated July 9th 1849, to secure bonds to the amount of $956,800, payable on the 1st of July 1855, and the second, dated July 9th 1856, to secure bonds to the amount of $988,200, payable on the 1st of July 1865. A large amount of these bonds is still outstanding. Their net earnings, after deducting annually the amounts paid on the floating debt, and for interest on their bonds, and ten thousand dollars for a sinking fund for the extinguishment of the bonds, were in 1858, $4477.19; in 1859, $32,395.11; in 1860, $53,240.38; in 1861, $29,351.08; and in 1862, before the commencement of this suit, about $31,000. These surplus earnings were principally disposed of in the purchase of the defendants' bonds. No dividends have ever been paid upon the defendants' capital stock; and the defendants' treasurer has never published any such notice as is mentioned in the vote attached to the certificate. On the 15th of July 1856 the cash balance of the defendants was $337,71; and on the day following, $5088.71; and on the day of bringing this action, (July 14th 1862,) they had available assets to the amount of $21,000; and at one time, in November 1861, they had such assets to the amount of about $75,000; but there

has never been in their treasury, at any one time since July 15th 1856, including all moneys lent on call, a sum sufficient to pay the whole amount of the interest provided for by the terms of the vote of February 9th 1853.

Upon these facts, judgment was rendered for the defendants; and the plaintiffs appealed to this court.

*H. Gray, Jr.*, for the plaintiffs.

*B. R. Curtis & H. C. Hutchins*, for the defendants.

BIGELOW, C. J. We have not deemed it necessary to the decision of this case to determine whether the votes, by which the defendants agreed to pay interest to their stockholders on the sums paid in by them on the assessments or calls towards the capital stock of the corporation, are illegal and void, as being *ultra vires*, or are insufficient to constitute a valid contract for want of consideration. In the view which we have taken of the case, these questions are unimportant.

Nor is it material to consider what would have been the rights of the plaintiffs as stockholders to claim and recover interest on assessments paid by them under the original vote of the corporation, passed on the 21st of November 1844, and the subsequent votes on the same subject prior to the 9th day of February 1853. If an action could have been maintained in their favor to recover interest after the completion of the road, as seems to be intimated in *Wright* v. *Vermont & Massachusetts Railroad*, 12 Cush. 68, it is very clear that they relinquished any such right by accepting the certificate issued in pursuance of the vote of the corporation passed in February 1853. This operated as a waiver of and substitute for any other claim or cause of action against the defendants, which they might have had under previous votes of the company, and constitutes the sole ground on which the plaintiffs must rely for the maintenance of the present action.

We are then to look to this certificate, and to the vote which is appended to it and forms part of the alleged contract, and by a just and fair interpretation of the language used, as applied to the subject matter, to ascertain and determine the rights of the parties to the present controversy.

Two points are clear beyond dispute. One is, that the contract relied on by the plaintiffs is not an absolute and unconditional promise for the payment of money. This was settled in *Cunningham* v. *Vermont & Massachusetts Railroad*, 12 Gray, . It is only an agreement to pay the amount of the interest due to the stockholders on a condition precedent expressed in the alternative. One branch of this alternative became impossible of performance. By the facts agreed in this case, it is apparent that neither the whole nor any substantial part of the interest could have been paid on the 15th day of July 1856, the day designated in the vote for the payment thereof either in full or *pro rata*, because there were no adequate funds in the treasury on that day applicable to such purpose. The promise or agreement thus became operative and capable of enforcement only in the contingency of the existence of the state of facts contemplated in the second alternative of the condition. This was, that the interest should be paid as soon after the day designated in the vote as the treasurer might be able to pay the same. In other words, it was an agreement to pay the interest as soon as and whenever the corporation should be able to pay it. The rule of law is clear and well settled, that, in order to maintain an action on such a promise, the burden of proof is on the party seeking to enforce it to show that at the time of suit brought there was a present ability to perform the contract according to its terms. *Proctor* v. *Sears*, 4 Allen, 95.

The other point which seems to us to be clear beyond controversy is, that the contract on which the plaintiffs rely cannot be regarded in the light of an agreement to pay debts, in the strict and proper meaning of that word. The claims of the stockholders for interest on their assessments cannot be deemed to stand on the same footing with debts due to creditors of the corporation, and arising in the course of the construction of the road, or in the prosecution of its regular business. The contract is to be construed with reference to its origin, and the alleged consideration on which it is founded. An agreement to pay interest to the stockholders on the capital stock contributed by them could not have been intended to create an absolute

liability, which the corporation were bound to meet at all events, and which was to be paid and discharged in preference to or even on an equality with the debts of the corporation due to third persons, and founded on considerations of a valuable nature, as for money lent, materials furnished or services rendered. The original votes of the corporation for the allowance of interest to the stockholders only declared a general right in them that each should be entitled to interest, to be computed on his payments towards the capital stock to the time when the road should go into operation, and be in a condition, not only to pay its ordinary and just debts, but also to earn income and pay dividends. *Wright* v. *Vermont & Massachusetts Railroad, ubi supra.* In the outset, at the time when the original votes were passed, it was doubtless supposed that this time would arrive when the road was completed and ready to transact business. But subsequent experience showed that this was an error. The corporation became heavily embarrassed with debt, and found it difficult to meet its ordinary and necessary expenditures. It was under these circumstances, and to carry out the original intent and purpose of the votes declaring the right of the stockholders to receive interest on the assessments or calls paid by them, that the votes of the corporation and of the directors in February 1853 were passed, and the certificate relied on by the plaintiffs was issued. Interpreted in the light of these circumstances, the agreement is only to pay money in the nature of a dividend of income or profits. That it was so regarded by the parties is manifest. It is called an " interest dividend " in the vote of the corporation, in pursuance of which the directors caused the certificates to be issued to the stockholders ; and the agreement is expressly made conditional on the ability of the corporation to pay " said dividend." It is obvious that this view of the true interpretation of the contract has an important bearing on the vital question at issue in the present case. We are to determine, not whether the plaintiffs have shown a present ability at the time of suit brought to pay a debt which it owes to a third person. The real question on which the decision of the case hinges is a very different one. It is, whether **it**

is made satisfactorily to appear that the corporation was able to pay a dividend to its stockholders at the time when the action was commenced.

To enable us to decide this question, it is essential to ascertain the amount due from the defendants for such dividend. On this point there would be no room for doubt, but for the suggestion that a portion of the amount due to stockholders and credited to them on the books of the corporation has become barred by the statute of limitations. This suggestion is founded on the fact that a large number of the stockholders, to whom the greater part of the interest dividend is due, have omitted to take out certificates of the amounts credited to them respectively, in pursuance of the votes of the corporation and directors already referred to. It is contended on the part of the plaintiffs that the claims of all stockholders who did not demand and receive such certificates are now barred. But we are unable to see any just foundation for this position. No time is fixed within which a stockholder is required to demand the certificate to which he may be entitled ; nor is the claim for interest made dependent on the issue of a certificate ; nor yet does such issue constitute the essence of the agreement or promise. This was, to pay the amount due on a day specified, if there was then money sufficient in the treasury which could be applied to such purpose ; and if not, then to pay it when the corporation should be able. If the former contingency had arisen, the statute bar would have become complete in six years from the day when the money became payable ; in the latter alternative, the statute would certainly not begin to run until the contemplated contingency should have happened, the dividend should have become payable, and the cause of action should have thereby accrued. Indeed, we can see nothing in the terms of the votes authorizing the treasurer to issue certificates, which can be construed as a restriction on the right of the stockholders to demand and receive them at any time before the money became payable in either of the prescribed contingencies, nor even afterwards, if the corporation were not ready to make payment according to the contract. No right or cause of action accrued against the company merely

by force of the vote conferring on the treasurer authority to issue the certificates; certainly not until demand and a refusal to comply with the terms of the vote. In no aspect, therefore, can the omission to demand their certificates be deemed to operate in such manner as to bar the claims of any of the stockholders for interest. They were manifestly intended only as a mode of declaring and adjusting the dividends of interest due to the sev eral stockholders, and to be the evidence of the amount due to each, and of the contract or promise to pay it, according to the terms embraced in the votes of the corporation and directors. We are, therefore, of opinion that no part of the claims of the stockholders for interest dividends can be deemed to have been barred at the time of the commencement of this suit, and that the defendants were then legally liable, if at all, not only to those who had received their certificates, but also to those who were entitled to receive them in pursuance of the votes by which the treasurer was directed to issue them.

It is to be observed, also, that in determining the question of the ability of the corporation to meet and discharge this liability at the date of the plaintiffs' writ, the entire amount of the interest due to the several stockholders is to be regarded as a single liability, which the corporation in the prescribed contingency was bound to be ready to pay to all the stockholders at the same time. It was in the nature of a dividend. No one stockholder or class of stockholders was entitled to preference over any other. They all stand in equal right. Nor could the corporation be deemed to be in a condition to fulfil their contract unless they have had in their possession and control, properly applicable to the payment of these dividends, a sum sufficient to pay the entire amount thereof. The right to demand a *pro rata* payment was confined by the terms of the vote to a contingency which did not arise. Even if such a liability did exist, it is very questionable whether it could be enforced in an action at law. However this may be, we think it clear that the right of the plaintiffs to recover, as the case now stands, depends on proof of the ability of the corporation to pay the whole dividend to each stockholder. The

condition was to pay all that remained due, not any proportional part thereof.

The case thus resolves itself into the single inquiry whether it satisfactorily appears by the agreed statement of facts that the defendants, at the time of suit brought or previous thereto, were able to pay this dividend to their stockholders. We think it must be conceded that it is not necessary that it should be shown that a sum adequate to meet and pay the whole amount of it was in the treasury of the corporation at any one time. If it was made to appear that they have had money at different times, the aggregate of which would be sufficient to make the payment, and which might and ought properly to have been appropriated for that purpose, but which they have voluntarily expended for other objects, without retaining it until the necessary sum was obtained to pay the dividend, the plaintiffs would have sustained the burden of proof, and be entitled to maintain their action, if the contract is a valid one and binding on them. A party cannot set up as a ground of defence that he has by his own voluntary act put it out of his power to perform his contract. But, on the other hand, it is not sufficient for the plaintiffs to show that there were surplus earnings in the treasury, after the payment of the current expenses and the debts which were due and payable, including the interest on the funded debt and the annual payment to the sinking fund. The ability which the plaintiffs are to establish is to pay a dividend to stockholders; not a debt due to a third person. We are by no means ready to lay it down as a rule that a railroad corporation is able to pay a dividend, merely because it has surplus earnings on hand after it has met and discharged its present and immediate liabilities. Nor do we think that such was the ability contemplated in the condition annexed to the contract on which the plaintiffs rely. Interpreting the agreement in a reasonable manner, with reference to the subject matter to which it relates, the fair inference is that the parties intended that the payment should be made when the directors, acting in good faith, might properly determine that the corporation was able to pay it, consistently with a due regard to the interests of the

corporation and its creditors, as well as to the rights of the stockholders under the contract. Certain it is, that no proper judgment of the ability of such a corporation to pay a dividend could be made, except in view of all the liabilities of the corporation, present and prospective, contingent as well as certain. We do not mean to say that by the terms of the contract, or by any rule of law applicable to its construction, the ultimate and final power to decide on the question of the ability to pay the dividend was vested in the directors. Such we think is not the rule of law. A party is not to determine for himself whether he has committed a breach of his contract. The final decision of the question must rest with the court. But, in determining it, the court ought to adopt the same standard of judgment as that which would regulate the exercise of the sound discretion of directors, acting in good faith, in deciding the same question Nor do we think it unreasonable, in a case like the present, that a court should require full and plenary proof from the plaintiffs that there has been a breach of the contract. The affairs of the corporation are by law intrusted to the management of directors elected by the stockholders. It would be safe to presume that they have acted with fairness and impartiality in omitting to pay the dividends in question to the stockholders. They have the best means of knowing the condition of the corporation, and of forming a correct estimate of its resources and liabilities. In the absence of any proof of a want of good faith, or a wanton dereliction of duty, a court ought to be slow in coming to a conclusion that they have misapplied the corporate funds, or diverted them from the payment of a dividend which had become justly due to the stockholders. It certainly is not going too far to say that, on the facts agreed, the reasonable inference is that in the judgment of the directors the corporation did not possess the requisite ability to pay the amount of the dividends due to the stockholders under the contract with them on which the plaintiffs rely to maintain the present action.

Upon a full and careful consideration of all the facts, we are unable to come to a different conclusion. The defendants own a railroad of many miles in extent, which they are bound to

operate and to keep constantly supplied with sufficient motive power and adequate means for the transportation of passengers and freight. Its income is uncertain and fluctuating in amount, and until quite a recent period — about four years prior to the commencement of this action — was insufficient to meet the regular annual expenditures and liabilities of the corporation. Not only are the necessary expenses large, and the property of the corporation of a nature to require constant and extensive repairs, but it is also exposed to sudden and grave contingencies which may at any time require a large outlay of money. This the corporation ought to be in a condition promptly to meet. In addition to all these considerations, it appears that there is a large debt due from the defendants, which will fall due on the first day of July 1865, within three years from the time when this suit was brought. Under these circumstances, it does not seem to us that the aggregate of the surplus earnings in the hands of the corporation is so large as to warrant the directors in appropriating the larger part of them to the payment of the dividend of interest to the stockholders. Looking at the financial condition of the corporation, the contingencies and exigencies to which it is necessarily exposed, and the large indebtedness due, the payment of which is to be provided for at no very remote period, we cannot say that the plaintiffs have affirmatively shown such an ability of the corporation to pay the dividend due to the stockholders as to prove a breach of the contract declared on, and to authorize us in sustaining this action.

*Plaintiffs nonsuit.*